UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-24233-CIV-O'SULLIVAN

MERCEDES GUINAND-DAO,

      Plaintiff,

v.

BAPTIST HEALTH OF SOUTH FLORIDA, INC.,

      Defendant.

_____/

**ORDER GRANTING SUMMARY JUDGMENT IN DEFENDANT'S FAVOR**

THIS MATTER came before the Court on the Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE# 53, 11/13/20). Having carefully considered the motion, the Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment (DE# 54, 11/13/20), the Defendant's Notice of Filing Exhibits in Support of Its Motion for Summary Judgment (DE# 55, 11/13/20),  the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (DE# 58, 12/1/20), the Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Affirmative Statement of Material Facts (DE# 59, 12/1/20), the Plaintiff's Notice of Filing Exhibits in Support of Her Response in Opposition to Defendant's Motion for Summary Judgment (DE# 60, 12/1/20), the Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment (DE# 65, 12/8/20), the Defendant's Reply to Plaintiff's "Affirmative Statement of Facts" (DE# 66, 12/8/20), the Defendant's Notice of Filing Supplemental Authority in Support of Its Motion for Summary Judgment (DE# 69, 12/15/20)[1], and the Court file and record evidence, it is

---

[1] The defendant provided a recent unpublished Eleventh Circuit decision, <u>Tamba v. Publix Super Markets, Inc.</u>, No. 19-14108, 2020 WL 6816964 (11th Cir. Nov. 20, 2020) (unpublished) (affirming summary judgment in favor of

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE# 53, 11/13/20) is GRANTED on the grounds set forth below.

INTRODUCTION

The defendant seeks summary judgment on the plaintiff's claims that Baptist unlawfully terminated her employment based on her age and/or disability. The defendant also seeks summary judgment on the plaintiff's claims that Baptist terminated her employment in retaliation for complaints she made against her manager. Additionally, the defendant seeks summary judgment on the plaintiff's claim that Baptist failed to accommodate her hearing impairment.

In her First Amended Complaint, the plaintiff asserts claims for discrimination and retaliation in violation of the American's with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Additionally, the plaintiff alleges failure to accommodate under the ADA. See Count I (ADA Disability Discrimination -Failure to Accommodate); Count II (ADA Disability Discrimination); Count III (ADA Retaliation); Count IV (ADEA Age Discrimination); and Count V (ADEA Retaliation). First Amended Complaint (DE# 22, 12/12/19).

Baptist is entitled to summary judgment as a matter of law on the plaintiff's five claims because she cannot establish: (1) a *prima facie* case of unlawful discrimination under either the ADA or the ADEA (Counts II and IV, respectively); (2) a *prima facie* case of unlawful retaliation under the ADA or ADEA (Counts III and V, respectively); or a failure to accommodate claim under the ADA (Count I). Even if the plaintiff could establish *prima facie*

---

employer where employee failed to identify similarly situated comparator and failed to show that employer's proffered non-discriminatory reason for his termination was a pretext).

claims of discrimination, the plaintiff has failed to establish that Baptist's reason for her termination was pretextual.

<u>Plaintiff's Request for Rule 56(d) Relief Is Denied</u>

In her Response, the plaintiff requested relief under Rule 56(d) of the Federal Rules of Civil Procedure. Response at 13 (DE# 59, 12/1/20); Godwin Affidavit (DE# 60-8, 12/1/20). "Rule 56(d) provides shelter against a premature motion for summary judgment 'when facts are unavailable to the nonmovant.'" <u>Estate of Todashev v. United States of America</u>, 815 Fed. App'x 446 (11th Cir. 2020) (unpublished) (citing Fed. R. Civ. P. 56(d)).  Rule 56(d) provides:

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition [to a motion for summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  To invoke Rule 56(d),

> a party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified[,] facts," but "must specifically demonstrate how postponement of a ruling on the motion will enable [her] by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."

 <u>City of Miami Gardens v. Wells Fargo & Co.</u>, 931 F.3d 1274, 1287 (11th Cir. 2019) (quoting <u>Reflectone, Inc. v. Farrand Optical Co.</u>, 862 F.2d 841, 843 (11th Cir. 1989) (citation and internal quotation marks omitted)). The plaintiff has not satisfied Rule 56(d).

Counsel for plaintiff's initial and supplemental affidavits fail to show specifically how the discovery she seeks now[2] would allow her to rebut Baptist's showing of an absence of genuine

---

[2] The defendant filed its motion for summary judgment on November 13, 2020.  The undersigned held an informal discovery hearing on November 19, 2020 and ordered the defendant to provide the plaintiff's counsel with "the subject patient chart for the day that the incorrect medication or incorrect amount of medication was administered to the subject patient." Order (DE# 57, 11/19/20). In her supplemental declaration, the plaintiff's counsel acknowledges that Baptist produced documents pursuant to the Court November 13, 2020 Order.  The plaintiff repeats her request for all documents relative to the plaintiff's termination and the investigation of the incident

fact. See Wells Fargo, 931 F.3d at 1287.  Baptist explains that the documents the plaintiff seeks now were not part of the patient's chart and were not previously requested prior to the close of discovery. Reply at 10 (DE# 65, 12/8/20). The plaintiff had nine-months to conduct discovery before the October 30, 2020 deadline.  Counsel for plaintiff's affidavits fail to explain whether the plaintiff pursued discovery diligently and why she was unable to discover the facts she seeks now. Additionally, the plaintiff fails to specify in her counsel's affidavits how the discovery she seeks would rebut Baptist's showing of the absence of a genuine issue of fact.

Baptist argues further that the documents (i.e. the  June 20, 2014 Pyxis log and the pharmacy records regarding the June 20, 2014 Versed issues) are not relevant because the issue of whether or not the plaintiff administered the wrong medication is not dispositive to Baptist's motion for summary judgment. Id. (citing Rodriguez v. Cargo Airport Services  USA, LLC, No. 14-CV-22601, 2015 WL 13016400, at *8 (S.D. Fla. Aug. 5, 2015) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head….")); see Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.")

The plaintiff is not entitled to additional discovery under Rule 56(d).  The plaintiff had nine months to conduct discovery.  Her counsel's affidavits do not explain her failure to request and obtain the documents she seeks now, her failure to seek judicial relief sooner, and fail to specify

---

that led to the plaintiff's termination.  At a minimum, the plaintiff's counsel seeks the June 20, 2014 Pyxis log and the pharmacy records regarding the June 20, 2014 Versed issues. Godwin Supplemental Affidavit (DE# 64-1, 12/7/20).

how the additional discovery would enable her to rebut the absence of a genuine issue of fact.  The plaintiff's request for Rule 56(d) relief in her Response (DE# 58, 12/1/20) is DENIED.

## **FACTUAL FINDINGS**

The plaintiff, Mercedes Guinand-Dao ("plaintiff") was employed as a Registered Nurse ("RN") by the defendant, Baptist Health of South Florida Inc. ("Baptist"), for approximately 14 years prior to her termination in August 2014. Ex. A – Guinand-Dao Dep. at 22:5-10 (DE# 55-1, 11/13/20).

In 2008, Myrlene Decady-Alexis ("Ms. Decady-Alexis") became the manager of the plaintiff's unit at the Pediatrics Emergency Department and had the authority to recommend termination decisions. Id. at 29:10-18. At the time of the plaintiff's termination, she was working as an RN in the Pediatric Emergency Department. Id. at 23:5-10.

Reasonable Accommodations for Hearing Impairment

In 2010, the plaintiff disclosed to the Baptist's Human Resources Department that she suffered from a hearing impairment and required accommodations. Ex. C- Fidler Dep. at 31:3-8 (DE# 60-4, 12/1/20). The plaintiff received an ASCOM[3] device two years before her termination. Ex. A – Guinand-Dao Dep. at 128:12-19, 134:12-21 (DE# 55-1, 11/13/20) and Ex. 13 thereto (DE# 55-2, 11/13/20) (On July 10, 2014, the plaintiff wrote that "[m]y only accommodation requested was an ASCOM phone given to me 2 years ago."). Baptist provided the plaintiff with an ASCOM device, a vibrating beeper, a quiet workstation, and in addition provided disability training for **co-**workers.  Ex. C-Fidler Dep. at 33:1-24, exhibits at 92-102 (DE# 55-4, 11/13/20). The plaintiff

---

[3] An ASCOM is a portable communication device which only works inside the hospital. The ASCOM facilitates communication among hospital employees. Ordinarily, a regular staff member would not use an ASCOM; the device is more commonly used by a supervisor or charge nurse.  Ex. D.– Fidler Dep. at 132: 11-25 (DE# 55-4, 11/13/20).

represented to Baptist employees that she was satisfied with the accommodations provided by Baptist. Ex. A – Guinand-Dao Dep. at 139:3-23, 141:1-4 (DE# 55-1, 11/13/20); Ex. D. – Fidler Dep. at 104-05 (DE# 55-4, 11/13/20).

The plaintiff disputes that she did not inform Baptist of her disability until 2010.  The plaintiff relies on her Verification and a 2007 email. <u>See</u> Verification of Mercedes Guinand-Dao at ¶ 4 (DE# 60-1, 12/1/20) ("In 2007 I informed Baptist Health of South Florida ("Baptist") of my progressively worsening hearing impairment."); Email dated January 25, 2007 from the plaintiff to Donna Stevens marked confidential (DE# 60-2, 12/1/20) ("… I hope you can teach my peers that being … handicap[ped] does not mean lack of communication, is a different way of communications, as nurses we should be more understanding and compassionate.").

<u>Plaintiff's June 2014 Medication Administration Error and Baptist's Internal Investigation</u>

Versed[4] is a high-powered narcotic used to sedate patients. Ex. A – Guinand-Dao Dep. at 66:19-25, 67:1-6. (DE# 55-1, 11/13/20). Under Baptist's High Risk/High Alert Medications Policy, all medication discrepancies must be resolved, and an electronic explanation of the discrepancies must be provided. <u>Id</u>. at 84:21-25, 85:11-21. The plaintiff was aware of the High Risk/High Alert policy. <u>Id</u>.  Further, the plaintiff was aware of Baptist's Pyxis Medstation Policy which describes the procedures for wasting medication and required the immediate reporting of expected discrepancies. <u>Id</u>. at 80:25, 81:1-1. The Pyxis machine ("Pyxis") securely stores and dispenses narcotics. <u>Id</u>. at 81:18-21.  To access the Pyxis, a licensed healthcare provider **must** enter information identifying themselves and the patient who will receive the medication.  <u>Id</u>. at 81:15-25, 82:1-19. A record of Pyxis access information is kept by Baptist to monitor any discrepancies. <u>Id</u>.

---

[4] Versed is the brand name for the generic drug Midazolam.

On June 25, 2014, a routine narcotic count revealed a discrepancy of Versed stored in Pyxis on June 20, 2014. Ex. A – Guinand-Dao Dep. at 99:14-25, 100:1-9 (DE# 55-1, 11/13/20); Ex. D -- Request for Termination Approval at 1-2 (DE# 55-5, 11/13/20); Ex. E-Long Service Review at 1 (DE# 55-6, 11/13/20). Because of the discrepancy, the Baptist Pharmacy Pyxis team, the Pediatric Department leadership, and Baptist Human Resources investigated the narcotics discrepancy. Request for Termination Approval at 2, Ex. D to Guinand-Dao Dep. (DE# 55-5, 11/13/20).

On June 30, 2014, Michelle Trigg, a Baptist Care Supervisor in the Pediatric Emergency Department, learned of the Versed discrepancy that was found on June 25, 2014. Investigative File at 21, Ex. E to Plaintiff's Response attached to the plaintiff's Notice of Filing Exhibits under Seal (DE# 63, 12/7/20) (Sealed). On June 30, 2014, Ms. Trigg spoke via telephone to the plaintiff, who stated that she wasted the Versed with a witness observer and returned the other Versed.  Ms. Trigg stated that the plaintiff stated that she is unsure about the discrepancy in the Pyxis count. Id. (Sealed).

On July 5, 2014, Ms. Trigg spoke with the plaintiff regarding the Versed discrepancy. The plaintiff told Ms. Trigg that the Versed 5 mg/ml intranasal was initially ordered (verbally) by Dr. Rosa and then changed by the doctor to Versed 1 mg/ml IV. The plaintiff told Ms. Trigg that she removed the Versed 5 mg/ml from the Pyxis, did not give it to the patient and wasted the medication because she had opened the top.  The plaintiff did not understand why there was a Versed 2 mg/ml count discrepancy.  She stated that she removed Versed 2 mg/ml dose and gave one mg for sedation and the other mg wasted with Maribel as her witness. The plaintiff stated that there was no discrepancy when she withdrew the medication but possibly could have pulled out the Versed 2 mg/ml under another account number. Id. at 22 (Sealed).

On July 8, 2014, Michelle Trigg, a Baptist Care Supervisor in the Pediatric Emergency Department, sent an email to Jennifer Pizzi ("Ms. Pizzi"), Pharmacy Pyxis Team, with a courtesy copy to Myrlene Decady-Alexis and DG-BH Pharmacy Pyxis Team regarding the unresolved Versed discrepancy.  In her email, Ms. Trigg stated that she "spoke to Carolina Guinand[5] on Saturday [June 5, 2014] concerning the Versed count discrepancy" and that the plaintiff "stated that she might [have] pulled Versed out under another account." Ex. E to Plaintiff's Response attached to the plaintiff's Notice of Filing Exhibits under Seal (DE# 63 at 34, 12/7/20) (Sealed). Ms. Trigg requested that Ms. Pizzi check the Pyxis activity on June 20, 2014 for Carolina Guinand. Ex. E to Plaintiff's Response attached to the plaintiff's Notice of Filing Exhibits under Seal (DE# 63 at 34, 12/7/20) (Sealed).

On July 11, 2014, Baptist's Human Resource Site Management notified the plaintiff that effective July 11, 2014 the plaintiff was placed on Administrative Leave with Pay.  Ex. A – Guinand-Dao Dep. at 69-70, Ex. 1 (DE# 55-2, 11/13/20).

The investigation revealed that the plaintiff removed five milligrams of Versed at 15:34 on June 20, 2014 and administered Versed to the patient at 15:48. Id. According to the investigation report, an order was placed by a physician, Dr. Rosa, to administer one milligram of Versed to a patient under the plaintiff's care. Ex. A – Guinand-Dao Dep. at 71:23-25 (DE# 55-1, 11/13/20); Ex. D -- Request for Termination Approval at 2-3 (DE# 55-5, 11/13/20); Ex. E- Long Service Review at 1 (DE# 55-6, 11/13/20). Plaintiff removed five milligrams of Versed from Pyxis for the patient for which the one milligram of Versed was ordered. Ex. D -- Request for Termination Approval at 2 (DE# 55-5, 11/13/20).  The plaintiff then documented on the sedation record that she administered one milligram of Versed to the patient. Id. Further, the

---

[5] Carolina is the plaintiff's middle name and the name she used at work. Ex. C – Fidler Dep. at 45:9-17 (DE# 55-4, 11/13/20).

plaintiff administered the Versed to the patient without the physician being present, contrary to the physician's wishes. Request for Termination at 4, Ex. D to Guinand-Dao Dep. (DE# 55-5, 11/13/20); and Long Service Review at 2, Ex. E to Guinand-Dao Dep. (DE# 55-6, 11/20/20). Because Versed's is a High Risk/High Alert medication, two licensed practitioners must independently and separately confirm that the correct drug is being administered to the correct patient, in the correct dose, route, and time. Id. The plaintiff stated during the investigation that Dr. Rosa and RN Soto double checked with her. Id. The investigation yielded no documentation that an independent check was performed prior to the administration of Versed to the patient. Id.

Ms. Decady-Alexis and HR Consultant Elizabeth Ruiz ("Ruiz") asked the plaintiff to explain the steps taken when she accessed the Versed in Pyxis on June 20, 2014. Id. at 3. The plaintiff maintained that she removed five milligrams and then realized it was the wrong amount and wasted it with RN Soto.[6] Id. Additionally, the plaintiff maintained that she performed several removals of the medication from Pyxis because she needed a witness to document the waste and could not find anyone who was available. Id. The removals and cancellations of removals occurred after the Versed was already administered to the patient. Id.

After the investigation, Baptist's independent Long Service Review Committee ("Committee")[7] concluded that the plaintiff took "deliberate actions to cover her incorrect

---

[6] RN Soto stated during the investigation that although he documented wasting the medication with the plaintiff, he did not witness the waste of the medication. Further, RN Soto admitted that he did not follow the Controlled Substances-Wastage/Disposal policy. (DE# 55-5, 11/13/20) Ex. D – Request for Termination Approval at 2 (DE# 55-1, 11/13/20). Because RN Soto was forthcoming during the investigation, he cannot be considered a similarly situated employee who was treated more favorably.

[7] Because of the plaintiff's lengthy tenure with Baptist, the recommendation to terminate the plaintiff's employment was presented to Baptist's independent Long Service Review Committee, which consisted of the entity CEO, the Corporate Vice President and Chief Human Resources Officer, the Corporate Director, the Employee Relations/Ombudsman, a representative from Pastoral Care, the responsible Vice President and Human Resources Site Director. Defendant's

narcotics administration." Id. at 4. Baptist maintains that the plaintiff was given multiple opportunities to clarify her actions and her failure to do so violated Baptist's Employee Conduct Policy. Id.

On August 1, 2014, the plaintiff was informed that her employment at Baptist had been terminated for violating Baptist's HR Employee Conduct Policy. Ex. A – Guinand-Dao Dep. at 73:18-74:17-21 and Ex. 2 (DE# 55-1, 55-2, 11/13/20). The plaintiff was aware that lying during an investigation may result in her termination. Id. at 51:21-25. Because of the plaintiff's long-time employment at Baptist, her termination decision was reviewed by Baptist's Long Service Review Committee on July 21, 2014. Ex. E – Long Service Review (DE# 55-6, 11/13/20). The Committee upheld the plaintiff's termination. Id.

To challenge her termination and without citing record evidence, the plaintiff asserts that "[o]ther nurses supervised by Ms. Decady-Alexis were not disciplined for the same misconduct allegedly committed by Plaintiff." Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Affirmative Statement of Material Facts ¶ 33 (DE# 59, 12/1/20); see Verification of Mercedes Guinand-Dao ("Plaintiff's Verification") ¶ 35 (DE# 60-1, 12/1/20) ("Several other employees in my department had made mistakes in administering medications to patients, including, but not limited to, Tina Jacamino.").

Without citing record evidence, the plaintiff identifies eleven RN employees whom she asserts are under the age of 40, were supervised by Ms. Decady-Alexis and were made full time employees. Plaintiff's Verification at ¶ 41 (DE# 60-1, 12/1/20).

---

Reply at 8 (DE# 65, 12/8/20) (citing Defendant's Statement of Undisputed Material Facts (DE# 54 at ¶ 31, 11/13/20)).

<u>Plaintiff's Retaliation Complaint to Human Resources</u>

On July 10, 2014, the plaintiff sent an email to Adriene McCoy ("Ms. McCoy"), Baptist's Vice President of Human Resources, with the subject "FT position – confidential" in which the plaintiff stated a complaint of discrimination by Ms. Decady-Alexis.  Ex. 13 in Ex. B to Guinand-Dao Dep. 126:3-14 (DE# 55-2, Ex. A & B, 11/13/20) (alleging discrimination and retaliation by Ms. Decady-Alexis for not awarding the plaintiff a full time position and other committee assignments because Ms. Decady-Alexis "has been either intimidated by my hard of hearing for 30 years or she really doesn't like disabled people in her unit").  In her deposition, the plaintiff confirmed that she contends that her suspension from work on July 11, 2014 was **a** pretext to hide Ms. Decady-Alexis' retaliation for complaining about discrimination in the July 10, 2014 email. Ex. B to Guinand-Dao Dep. 126:25-127:1-10 (DE# 55-1, 11/13/20). Further, the plaintiff contends that Ms. Decady-Alexis was aware of the plaintiff's July 10, 2014 email complaint and that she was placed on leave because of her complaint. Plaintiff's Affirmative Statement of Facts at 5:39 (DE# 59,12/1/20); Ex. A – Guinand-Dao Dep. at 127:4-10 (DE# 55-1, 11/13/20).  In her same deposition, the plaintiff stated that she did not know if Ms. Decady-Alexis was aware of the July 10, 2014 complaint. Ex. A – Guinand-Dao Dep. at 127:4-10 (DE# 55-1, 11/13/20**).**  Plaintiff also stated that no one ever told her that she was being suspended because she raised a complaint of discrimination. <u>Id.</u> at 127:11-14.

The plaintiff testified during her deposition about three times (2010, 2011, and 2014) when she called Baptist's hotline as part of the grievance process. The three hotline calls did not

mention the plaintiff's hearing disability as the basis for the complaints against her manager, Ms. Decady-Alexis.[8] The plaintiff filed two grievances with the EEOC. Id. at 58:5-25.

Specifically, in 2011, more than three years before her termination, the plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that she was unfairly disciplined because of her hearing disability. Charge of Discrimination, Ex. A – Guinand-Dao Dep. Ex. 11 (DE# 55-2, 11/13/20).  Pursuant to the EEOC's Dismissal and Notice of Rights dated January 3, 2012, which concluded that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes …," the EEOC explained that the plaintiff had ninety days from receipt of the notice within which to file a federal lawsuit or her "right to sue based on this charge will be lost." EEOC's Dismissal and Notice of Rights Ex. A – Guinand-Dao Dep. Ex. 11 (DE# 55-2, 11/13/20).

## ANALYSIS

### I. Legal Standards

#### A. Summary Judgment

When "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

---

[8] In her deposition the plaintiff stated that she used the Baptist grievance process via a hotline three times in 2010, 2011 and 2014.  In 2010, the plaintiff complained about the hostile environment, harassing, discrimination by her manager, Ms. Decady-Alexis, and Bianca in Human Resources and the entire administration of the Baptist Children Pediatrics.  Ex. C – Guinand-Dao Dep. at 52:2-24; 53:1-6.  The plaintiff also complained that her manager, Ms. Decady-Alexis, wrote her up and accused her of sending a patient home without antibiotics. Id. at 54:17-23.  In 2011, the plaintiff called the hotline complaining that her manager was harassing her for failing to transport a patient to ultrasound.  Id. at 54:24-55:25. In 2014, the plaintiff called the hotline after Ms. Decady-Alexis called her and told her to go to Human Resources because of the wrong medication in the Pyxis. Id. at 57:8-24. The plaintiff requested an investigation. Id. at 57:21-58-4.

the moving party is entitled to judgment as a matter of law," then the Court should grant summary judgment. Fed. R. Civ. P. 56(c).  The moving party bears the burden of meeting this exacting standard.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. <u>Batey cv. Stone</u>, 24 F.3d 1330, 1333 (11th Cir. 1994).

Despite the presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by unnecessary trial.  <u>Celotex</u>, 477 U.S. at 322-323. The non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  <u>Id</u>. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  There must be evidence on which the jury could reasonably find for the non-movant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  If the record presents factual issues, the Court must deny the motion and proceed to trial.  <u>Id</u>. at 251.

### B.  The *McDonnell-Douglas* Burden Shifting Paradigm

The Age Discrimination in Employment Act ("ADEA") makes it illegal to discriminate based on age against any employee who is at least 40 years old. 29 U.S.C. §§ 623(a), 631(1).  A plaintiff claiming age discrimination in violation of the ADEA "must prove that age was the 'but-for' cause of the employer's adverse decision." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167 (2009); <u>see also</u> <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1332 (11th Cir. 2013).  Likewise, the Americans with Disabilities Act ("ADA") prohibits discrimination against "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a).  Additionally, the ADA makes it illegal to retaliate against an individual who exercises ADA protected rights.

Direct or circumstantial evidence may be offered by a plaintiff to establish a claim for discrimination or retaliation.  In the present case, the lack of direct evidence requires the plaintiff to establish her claims through circumstantial evidence under the burden-shifting analysis applied in Title VII employment discrimination cases.  Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir. 2002); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Under the McDonnell Douglas framework, "the employee has the initial burden to establish a prima facie case of discrimination by proving that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently." Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012).  To satisfy the similarly situated requirement, "the employee must prove that he and his comparators are 'similarly situated in all material respects.'" Id. (quoting Lewis v. City of Union City, 918 F.3d 1213, 1227-28 (11th Cir. 2019) (en banc)).  "This means that the employee and his comparators must have been engaged in the same basic conduct and subjected to the same work rules." Id.

If the plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the employer to proffer a 'legitimate, nondiscriminatory reason for its decision.'" Id. (citing Holland, 677 F.3d at 1055 (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)). The employer's burden is one of production, not persuasion. Wascura, 257 F.3d at 1242 (citing Chapman v. Al. Transport, 229 F.3d 1012, 1024 (11th Cir. 2000)). If the employer presents one or more legitimate, non-discriminatory reason for its decision, "the presumption of discrimination is eliminated" and then the plaintiff must present evidence of pretext for discrimination "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman v. AI

Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting Combs v. Plantation Patterns, 106 F.3d

1519, 1528 (11th Cir. 1997) (citations omitted)). If the plaintiff fails to submit "sufficient

evidence to create a genuine issue of material fact regarding whether each of the defendant

employer's articulated reasons is pretextual, the employer is entitled to summary judgment on

the plaintiff's claim." Id. at 1024-25 (citing Combs, 106 F.3d at 1529).

## II.    Age Discrimination, Disability Discrimination and Retaliation

The plaintiff filed her First Amended Complaint against Baptist asserting claims for

wrongful discrimination and retaliation in violation of the Americans with Disabilities Act, 42

U.S.C. § 12101 et seq., as amended ("ADA") and the Age Discrimination in Employment Act

(29 U.S.C. §§621 et seq.) ("ADEA"). The plaintiff also alleges ADA disability discrimination as

failure to accommodate her hearing disability.  See First Amended Complaint and Demand for

Jury Trial (DE# 22, 12/12/19).[9]  The defendant seeks summary judgment on the plaintiff's

claims that Baptist unlawfully terminated her employment based on her age (Count IV) and/or

her disability (Count II) and that Baptist terminated her in retaliation for complaints of

discrimination that she made against her manager, Ms. Decady-Alexis (Counts III and V).

Baptist maintains that the plaintiff's termination had nothing to do with the plaintiff's age,

disability or complaints against her manager. Baptist relies on record evidence that shows that

Baptist terminated the plaintiff after determining that the plaintiff attempted to cover up a serious

medical administration error that put a pediatric patient's life at risk.  Although the plaintiff

---

[9] The plaintiff's Charge of Discrimination dated September 2, 2014 filed with the EEOC was marked as Exhibit 9 to her deposition. EEOC Charge of Discrimination, Ex. B –Guinand-Dao Dep. (DE# 55-2, 11/13/20).  The EEOC's Notice of Right to Sue (Issued on Request) dated July 10, 2019 is attached to the plaintiff's complaint as Exhibit B (DE# 22-2, 12/12/19).  The EEOC Intake Questionnaire date-stamped August 28, 2014 was marked Exhibit 15 to the plaintiff's deposition (DE# 55-2, 11/13/20); Ex. B-- Guinand-Dao Dep. (DE# 55-2, 11/13/20).

maintains that she did nothing wrong, the record evidence reveals that her termination was not

based on her age and/or disability.  Baptist also seeks summary judgment on the plaintiff's ADA

failure to accommodate claim (Count I) because the plaintiff has failed to produce record

evidence to rebut record evidence that Baptist accommodated the plaintiff's hearing disability

and that the plaintiff subsequently expressed her satisfaction with the accommodation.

     A.     <u>No *Prima Facie* Case of Disability or Age Discrimination (Counts II and IV)</u>

To avoid summary judgment, the plaintiff must establish a *prima facie* case of age

discrimination under the ADEA by presenting record evidence that: (1) she belongs to a

protected category; (2) she was subjected to an adverse employment action; (3) similarly situated

employees outside of her protected classification(s) were treated more favorably; and (4) she was

qualified to do her job.  <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citing

<u>McDonnell Douglas Corp.</u>, 411 U.S. at 792). "To ultimately prevail, '[a] plaintiff must prove by

a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-

for' cause of the challenged employer decision.'" <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746

F.3d 1264, 1270 (11th Cir. 2014) (quoting <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167,

177-78 (2009)).  Baptist argues that the plaintiff has failed to satisfy the third and fourth

elements of a *prima facie* case of age discrimination.

To establish a *prima facie* case of disability discrimination, the plaintiff must show that

she: (1) had a disability[10]; (2) was a "qualified individual"[11] and (3) was subjected to unlawful

discrimination because of her disability. <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264,

---

[10] For the purposes of the Motion, Baptist does not dispute that the plaintiff's hearing impairment constitutes a disability.

[11] The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1267-68 (11th Cir. 2014).  Under the ADEA, a "qualified individual" refers to whether an employee's "skills and background" render him or her qualified for the position in question.  <u>See Damon v. Fleming Supermarkets of Florida, Inc.</u>, 106 F.3d 1354, 1360 (11th Cir. 1999).

1270 (11th Cir. 2014); <u>Garrison v. City of Tallahassee</u>, 664 Fed. App'x 823, 825-26 (11th Cir. 2016); <u>Raytheon Co. v. Hernandez</u>, 124 S. Ct. 513, 519 (2003) (A claim of discrimination based on disparate treatment under the ADA "is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or [other protected characteristic].") (quoting <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335 n.15 (1977)). In the Eleventh Circuit, "the Title VII burden-shifting framework applies to ADA claims … that rely on circumstantial evidence." <u>Wolfe v. Postmaster General</u>, 488 Fed. App'x 465, 468 (11th Cir. 2012) (unpublished) (citing <u>Wascura v. City of South Miami</u>, 257 F.3d 1238, 1242 (11th Cir. 2001)). "To establish unlawful disparate treatment, a plaintiff generally must demonstrate that [her] employer treated similarly situated employees outside of [her] protected class more favorably than [she] was treated." <u>Id</u>. (citing <u>Burke-Fowler v. Orange County, Florida</u>, 447 F.3d 1319, 1323 (11th Cir. 2006)); <u>see</u> <u>Caporicci v. Chipotle Mexican</u>, 189 F. Supp. 3d 1314, 1323 (M.D. Fla. 2016) ("In the disparate-discipline context, a plaintiff typically satisfies her burden under the third element by showing that a non-disabled employee, or 'comparator' engaged in a similar work rule violation but was treated more fairly.")(quoting <u>Wolfe</u>, 488 Fed. App'x at 468). "When the plaintiff alleges, as here, that other employees engaged in similar misconduct but were not similarly disciplined, the plaintiff must produce evidence that 'the quantity and quality of the comparator's misconduct [was] nearly identical.'" <u>Wolfe</u>, 488 Fed. App'x at 468 (quoting <u>McCann v. Tillman</u>, 526 F.3d 1370, 1373 (11th Cir. 2008) (quotation marks omitted)).  Disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of

the business of such covered entity…." 42 U.S.C. § 12112(b)(5)(A); Hill v. Clayton County School District, 619 Fed. App'x 916 (11th Cir. 2015); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). The plaintiff bears the burden of proof by a preponderance of the evidence on each of the three elements of disability discrimination. Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1226 (11th Cir. 1999). Baptist concedes that the plaintiff has a disability.  Baptist argues that the plaintiff cannot establish that she was a "qualified individual" at the time of her termination.  The plaintiff cannot establish that she was a qualified individual due to her failure to comport her conduct with Baptist's HR Conduct Policy. See discussion at p. 20 below.

### 1.   No Comparators Who Are Similarly Situated

The plaintiff has failed to show that the defendant treated similarly situated younger and non-disabled employees more favorably than her. In Lewis, the Eleventh Circuit explained that "[o]rdinarily … a similarly situated comparator—will have engaged in the same basic conduct (or misconduct) as the plaintiff…; will have been subject to the same employment policy, guideline or rule as the plaintiff…; will ordinarily (although not invariably) been under the jurisdiction of the same supervisor as the plaintiff…; and will share the plaintiff's employment or disciplinary history…." Lewis, 918 F. 3d at 1227-28 (internal citations omitted); see Wolfe, 488 Fed. App'x at 468. The "all-material-respects standard" for comparators "serves the interest of sound judicial administration by allowing for summary judgment in *appropriate* cases—namely, where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot." Lewis, 918 F. 3d at 1228-29 (footnote omitted) (emphasis in original).

The plaintiff has failed to identify similarly situated comparators.  The plaintiff failed to present evidence of any other employee who conducted herself in a similar manner under similar

conditions yet remained employed by the hospital. Because the plaintiff failed to present evidence of any younger and non-disabled employees who engaged in the same or substantially same conduct and retained their employment, the plaintiff cannot establish an actionable claim for unlawful termination based on her age or disability. See Blow v. Virginia College, 619 Fed. App'x 859, 863 (11th Cir. 2015) ("Ms. Blow's failure to identify comparators, and thus to make out a *prima facie* case, is fatal to her discrimination claim in this case."); see also Knight v. Baptist Hospital of Miami, 330 F.3d 1313 (11th Cir. 2003) (finding the plaintiff and the comparator who had committed the same act were not similarly situated because the comparator's overall record was better); and see Caporicci, 189 F. Supp. 3d at 1323 (granting summary judgment on the plaintiff's ADA discrimination claim where the plaintiff offered no comparator evidence and failed to show that non-disabled employees were treated more favorably).

In support of her Response, without citing record evidence, the plaintiff submitted her own Verification and for the first time, identified Tina Jacamino as a "similarly situated" individual who allegedly made a medication error. Plaintiff's Verification ¶ 35 (DE# 60-1, 12/1/20). The plaintiff failed to disclose Tina Jacamino as a witness or potential comparator at any time prior to filing her Response and Verification. The record is devoid of any evidence or details regarding Tina Jacamino's alleged error, when it occurred, whether Ms. Jacamino self-reported or disclosed the alleged error, whether the plaintiff's manager was at all involved or aware of the alleged error, or any other evidence of Ms. Jacamino's employment, position or job performance at Baptist. Reply at 3 (DE# 65, 12/8/20). The plaintiff fails to cite any record evidence to show that Ms. Jacamino's alleged error created a discrepancy in Pyxis that led to an internal investigation or that Ms. Jacamino was investigated and that she gave conflicting and

contradictory explanations for the alleged error during such investigation suggesting that she was trying to cover up her alleged error. Id.  The plaintiff has failed to show that she and Ms. Jacamino were similarly situated in all material respects to establish a *prima facie* case of discrimination. See Lewis, 918 F.3d at 1218.

The plaintiff's claims that Soto Santos, Dr. Rosa, and Maribel Rivera are also similarly situated and proper comparators because they "lied" during the investigation but were not terminated equally lack merit.  The plaintiff cites no record evidence to support her conclusory allegations in her Verification.  The plaintiff fails to cite record evidence that shows these individuals were employed at the same level as her, were substantially younger than her, were supervised by Ms. Decady-Alexis, had similar performance histories and other factors that would make them similarly situated in all material respects. Reply at 4 (DE# 65, 12/8/20).  The plaintiff has failed to establish a *prima facie* case of age or disability discrimination because she has failed to show through record evidence that there are substantially younger or non-disabled employees who were similarly situated to her in all material respects and were treated more favorably by Baptist.

The plaintiff's attempt to establish a *prima facie* claim of age or disability discrimination based on Baptist's alleged failure to offer her a full-time position likewise fails. The plaintiff has failed to provide evidence of the specifics as to the full-time positions she sought or the time of the full-time openings. The plaintiff relies on her own conclusory declaration in which she identifies 10 employees[12] that she claims were younger than her and were made full-time employees without providing any information regarding the timing of the full-time openings, the

---

[12] According to Baptist, the plaintiff identified Tamka Samuels, Melissa Samuels and Elena Santo in her Rule 26 initial disclosures, but failed to identify these individuals or any of the other individuals identified in her declaration as potential comparators.  Reply at 4 (DE# 65, 12/8/20).

nature of the positions these individuals allegedly received, the departments in which these individuals were hired, the job performance records of the individuals hired on a full-time basis, whether they were supervised by the same manager or any other details regarding their employment to show that these individuals were similarly situated in all material respects. Reply at 4-5 (DE# 65, 12/8/20); Plaintiff's Verification ¶ 41 (DE# 60-1, 12/1/20).  Because the plaintiff has failed to point to record evidence of comparators who satisfy the "similarly situated" requirement of a *prima facie* age discrimination claim, Baptist is entitled to summary judgment on the plaintiff's age and disability discrimination claims (Counts IV and II of the First Amended Complaint). See, Blow v. Virginia College, 619 Fed. App'x 859, 868 (11th Cir. 2015).

### 2.   Not a Qualified Individual

Baptist maintains that aside from her technical skills as a nurse, the plaintiff was unable or unwilling to conduct herself consistent with Baptist's conduct and professionalism standards. The evidence in the record reveals that the plaintiff had a long, documented history of performance issues and corrective action based on numerous patient and co-worker complaints. Ex. D—Request for Termination Approval (DE# 55-5, 11/13/20); Ex. E—Long Service Review (DE# 55-6, 11/13/20). The plaintiff was subject to numerous corrective actions from May 30, 2008 to her termination and was placed on decision-making more than once. Id. Where, as here the plaintiff cannot establish that she was qualified for her position, she cannot establish a *prima facie* case of disability or age discrimination.  Baptist is entitled to summary judgment on plaintiff's disability and age discrimination claims (Counts II and IV).

### B.   No *Prima Facie* Case of Failure to Accommodate under the ADA (Count I)

To establish a failure to accommodate claim under the ADA, the plaintiff must show that Baptist failed to provide reasonable accommodations for the plaintiff's hearing disability, unless

doing so would impose an undue hardship on the employer.  See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). In her deposition, the plaintiff testified that she represented to Baptist employees that she was satisfied with the accommodations that Baptist provided to her, which included the ASCOM device, amplifying equipment, vibrating beeper, quiet workstation and a disability training for other employees. Ex. A—Guinand-Dao Dep. at 139:3-23, 141:1-4 (DE# 55-1, 11/13/20); see Ex. D—Fidler Dep. at 1040195 (DE# 55-4, 11/13/20).

In her Verification, which conflicts with her prior sworn deposition testimony and fails to cite to record evidence, the plaintiff attempts to create a fact issue by suggesting that Baptist's accommodations were inadequate.  See Plaintiff's Verification ¶¶ 9-20 (DE# 60-1, 12/1/20); see also Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Affirmative Statement of Material Facts ¶¶ 17, 35-38 (DE# 59, 12/1/20). "'[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting … her own previous sworn statement … without explaining the contradiction or attempting to resolve the disparity.'"). Cleveland v. Policy Management System Corp, 526 U.S. 795, 806 (1999) (citations omitted). Because the plaintiff did not establish that Baptist denied her a reasonable accommodation with record evidence and failed to establish that she is a qualified individual, the plaintiff has not established a *prima facie* case of disability discrimination.  Baptist is entitled to summary judgment on the plaintiff's failure to accommodate discrimination claim under the ADA (Count I).

C.  No *Prima Facie* Case of Retaliation under the ADA or the ADEA (Counts III and V)

The plaintiff cannot establish an actionable claim for unlawful retaliation under the ADA (Count III) or the ADEA (Count V), which is analyzed under the same McDonnell Douglas framework employed for retaliation claims under Title VII. Stewart v. Happy Herman's Cheshire

Bridge, 117 F3d. 1278 (11th Cir. 1997) (citing McNely v. Ocala Star-Banner Corp., 99 F.3d

1068, 1075-77 (11th Cir. 1996)).  "To establish a *prima facie* case of retaliation, the plaintiff must

show: (1) that she engaged in statutorily protected expression; (2) she suffered adverse

employment action; and (3) a causal link between the protected expression and the adverse

action." Stewart, 117 F3d. at 1287 (citation omitted). "To establish a causal connection, a

plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that

the protected activity and the adverse actions were not wholly unrelated.'" Kidd v. Mando

American Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting Shannon v. Bellsouth

Telecommunication, Inc., 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted).

If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to Baptist to

provide a legitimate, non-retaliatory reason for the adverse employment action. See, Farley v.

Nationwide Mutual Insurance Co., 197 F.3d 1322, 1336 (11th Cir. 1999). If Baptist provides a

non-retaliatory reason for the plaintiff's termination, then the burden shifts back to the plaintiff

to show Baptist's reason is pretextual.

Baptist does not challenge the first two requirements. See Motion at 12 n.7 (DE#53,

11/13/20). Baptist argues that the plaintiff cannot establish the third causal connection

requirement.  Motion at 12 (DE# 53, 11/13/20); Reply at 5-6 (DE# 12/8/20). Baptist argues that

the plaintiff cannot show that during the investigation or at the time of the plaintiff's termination

the decision-makers in this case, Ms. Decady-Alexis or the members of the Long Service

Committee, were aware of the plaintiff's July 10, 2014 email to Ms. McCoy that complained of

disability discrimination. Id. The plaintiff's complaint in her July 10, 2014 email that people in

her unit did not like working with disabled individuals came after the investigation into the

plaintiff's medication administration error was underway.[13] Ex. A—Guinand-Dao Dep. at

124:13-25 and Ex. 13 thereto (DE# 55-1, 11/13/20); Ex. D—Request for Termination Approval

(DE# 55-5, 11/13/20); Ex. E—Long Service Review (DE# 55-6, 1/13/20).  Ms. Decady-Alexis

was not copied on that portion of the plaintiff's July 10, 2014 email to Ms. McCoy.  In her self-

serving, conclusory Verification, the plaintiff states that she complained to Ms. Decady-Alexis

directly without identifying any specific complaint or providing any detail regarding the dates of

those complaints or the temporal proximity of those complaints to her termination.  See Plaintiff's

Verification ¶ 42 (DE# 60-1, 12/1/20). In her deposition, the plaintiff testified that she did not

recall anyone sharing with Ms. Decady-Alexis that she complained about Ms. Decady-Alexis on

July 10, 2014. Ex. A—Guinand-Dao Dep. at 127:15-21 (DE# 55-1, 11/13/20).  Without citing

record evidence, in her Verification, the plaintiff states that "[w]henever I felt I had been

discriminated against by Myrlene Decady-Alexis, I complained directly to her about it and

informed her I would be filing a complaint with human resources (HR).  To the best of my

recollection, I did the same prior to my July 10, 2014 complaint." Plaintiff's Verification ¶ 42

(DE# 60-1, 12/1/20).

Where, as here, the plaintiff's Verification contradicts the plaintiff's prior sworn

deposition testimony without any explanation, the self-serving, uncorroborated Verification is

insufficient to create a genuine issue of fact to avoid summary judgment. See, e.g., Cleveland v.

Policy Management System Corp. 526 U.S. 795, 806 (1999). Because the plaintiff has failed to

---

[13] The medication administration error occurred on June 20, 2014.  The Versed Pyxis discrepancy
was discovered during a routine narcotic count on June 25, 2014. On June 30, 2014, Ms. Trigg
learned of the discrepancy and spoke to the plaintiff the same day. On July 5, 2014, Ms. Trigg
spoke to the plaintiff again regarding the discrepancy.  On July 8, 2014, Ms. Trigg emailed Ms.
Pizzi, Baptist's Pharmacy Pyxis Team, and copied Ms. Decady-Alexis.  On July 11, 2014, the
plaintiff was placed on Administrative Leave with Pay.  See Investigative File, Ex. E (DE# 63,
12/7/20) (Sealed); see also Request for Termination Approval (DE# 55-5, 11/13/20).

show that the decisionmakers knew of her July 10, 2014 complaint of discrimination at the time of the investigation regarding the medication administration error and her termination, the plaintiff has failed to satisfy the causal link element of a *prima facie* case of retaliation.

Temporal proximity appears to exist in that Baptist terminated the plaintiff's employment on August 1, 2014, which was less than one month after the plaintiff sent her July 10, 2014 email to Ms. McCoy. Even if the plaintiff could establish that her July 10, 2014 email complaint and her termination were causally connected, the plaintiff's conduct and inconsistencies during the investigation constituted an "intervening and superseding" event that broke any such causal connection. See Ex. A—Guinand-Dao Dep. at 71:23-25; Ex. D—Request for Termination Approval; Ex. E—Long Service Review (DE# 55-1, 55-5, 55-6, 11/13/20); see also Leach, 431 Fed. App'x at 777; see also Henderson v. FedEx Express, 442 Fed. App'x 502, 507 (11th Cir. 2011) (unpublished) (The plaintiff's "falsification of his time card was an intervening act of misconduct that diminished any inference of causation that may have arisen out of the temporal proximity between his protected activity and his termination."). The undersigned finds that the plaintiff's inconsistent statements during the investigation constitute an intervening and superseding event that broke the causal connection. The plaintiff has failed to satisfy the causal connection element and thus, has not established a *prima facie* case of retaliation.  Baptist is entitled to summary judgment on the plaintiff's retaliation claims under the ADA (Count III) and the ADEA (Count V).

D.   Plaintiff Cannot Establish That Baptist's Stated Reasons for Terminating Her Are Pretextual

Even if the plaintiff could establish *prima facie* cases of discrimination or retaliation, the undersigned finds that Baptist is entitled to summary judgment because Baptist established legitimate non-discriminatory reasons for its decision to terminate the plaintiff's employment

and the plaintiff failed to rebut Baptist's legitimate non-discriminatory reasons with record evidence of pretext.  Baptist terminated the plaintiff's employment because its investigation into a discrepancy of narcotics stored in a locked Pyxis machine revealed that the plaintiff administered the incorrect dosage of Versed to a minor patient and then tried to cover it up, failed to perform a double check with licensed healthcare professionals, lied during the investigation, failed to follow the controlled waste/disposal policy for both dosages of Versed, and failed to advocate for the safety of the patient in her care and covered a mistake that was harmful to the patient.  See Termination Letter (DE# 55-2, 11/13/20) ("As you were advised, your employment with Baptist has been terminated because of [the] failure to meet standards of the HR Conduct Policy #5250."); Ex. D—Request for Termination Approval at 2-5 (DE# 55-5, 11/13/20); Ex. E—Long Service Review at 1 (DE# 55-6, 11/13/20).

Where, as here, Baptist proffered non-discriminatory reasons for terminating the plaintiff's employment, "the presumption of discrimination is eliminated" and the burden shifts to the plaintiff to present "sufficient evidence to permit a reasonable factfinder to find that those reasons were pretextual." Chapman v. AI Transport, 229 F.3d 1012, 1028 (11th Cir. 2000) (citation omitted). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] own business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed simply by quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030 (citation omitted). "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decision process, no matter how mistaken the firm's managers, the ADEA does not interfere.'" Elrod v.

Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck and Co. 864 F.2d 1359, 1365 (7th Cir. 1988) (overruled on other grounds)). This Court's inquiry is limited to whether the employer reasonably believed in good faith that the employee engaged in misconduct, not whether the employee actually did. Id.; EEOC v. Total System Services, Inc., 221 F.3d 1171, 1176-77 (11th Cir. 2000); see Leach v. State Farm Mutual Automobile Insurance Co., 431 Fed. App'x 771 (11th Cir. 2011) (unpublished).

To show pretext, the plaintiff must submit evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that no reasonable factfinder could find them worthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). The plaintiff must present evidence that: (1) proves that the proffered reason is false; and (2) proves that discrimination was the real reason behind the termination.

The plaintiff's denial of wrongdoing in her own statement of facts and Verification is not sufficient evidence of pretext. In the Eleventh Circuit, a party may not avoid summary judgment with conclusory and unsubstantiated assertions. See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). The plaintiff, as the non-movant, must point to specific evidence or come forward with additional evidence in the record to avoid summary judgment. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116-17 (11th Cir. 1993). The plaintiff's self-serving, uncorroborated declaration that contradicts her own prior deposition testimony is insufficient to create a material issue of fact to avoid summary judgment. See Cleveland v. Policy Management System Corp., 526 U.S. 795, 806 (1999); see also Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir. 1986).

Baptist terminated the plaintiff because she violated its policies in how she conducted herself regarding the medication administration error and during the internal investigation.  In her Affirmative Facts, the plaintiff complains that she was "repeatedly harassed and disciplined her by [her manager] Decady-Alexis due to her hearing disability." See Plaintiff's Affirmative Facts ¶ 45 (DE# 59, 12/1/20). For support, the plaintiff cites her Verification and her deposition testimony. Ex. A—Plaintiff's Verification ¶¶ 66-8, 21-22; Ex. C—Plaintiff's Dep. 52:18-24; 55:1-25; 56:1-25; 57:1-25; 58:1-4 (DE# 60-3,12/1/20).  The plaintiff's cited deposition testimony describes three calls that the plaintiff made to the Baptist grievance hotline when her manager disciplined her for various incidents including the subject medication administration error, but do not support her contention that her hearing disability was the ground for her discipline. The plaintiff also complains that her manager led the investigation and questioned several witnesses. The plaintiff does not dispute that Baptist conducted an investigation and concluded that the plaintiff administered the incorrect dosage of Versed to the pediatric patient, failed to follow the proper procedures regarding the administration and waste of the medication, failed to immediately report the error to the appropriate personnel and/or then made contradictory and inconsistent statements during the investigation that revealed a cover up of her mistakes. Defendant's SOF ¶¶ 24-27 (DE# 54, 11/13/20); Ex. A –Guinand-Dao Dep. at 71:23-25 (DE# 55-1, 11/13/20); Ex. D—Request for Termination Approval at 2 (DE# 55-5, 11/13/20); Ex. E—Long Service Review at 1 (DE# 55-6, 11/13/20).

The plaintiff has failed to submit sufficient evidence for a factfinder to conclude that Baptist's reasons for her termination are false and were a pretext for discrimination and retaliation. See Chapman v. AI Transport, 229 F.3d 1012, 1031 (11th Cir. 2000). In her Response, the plaintiff continues to contradict statements she made during the investigation. During the

investigation, the plaintiff stated that she administered the Versed under the supervision of Dr.
Rosa (DE# 65-3, 12/8/20) and now claims that she did not administer the Versed at all.
Plaintiff's Verification ¶ 23 (DE# 60-1, 12/1/20).  Baptist argues that the plaintiff's repeated
discrepancies and inconsistencies regarding her own conduct supports Baptist's decision to
terminate her. The plaintiff does not dispute that the recommendation to terminate the plaintiff's
employment was reviewed by Baptist's Long Service Review Committee, of which the
plaintiff's manager, Ms. Decady-Alexis, was not a member. Reply at 8 (DE# 65, 12/8/20).

Because the plaintiff has failed to rebut Baptist's non-discriminatory reasons for its
decision to terminate the plaintiff's employment and submit sufficient evidence for a factfinder
to find that Baptist's real reason was discriminatory or retaliatory, Baptist is entitled to summary
judgment in its favor on the plaintiff's disability and age retaliation claims (Counts III and V,
respectively).

<u>CONCLUSION</u>

Because the plaintiff has failed to establish *prima facie* claims of failure to accommodate
under the ADA (Count I), disability discrimination under the ADA (Count II), age discrimination
under the ADEA (Count IV), and retaliation under the ADA (Count III) or ADEA (Count V),
Baptist is entitled to judgment as a matter of law.  Additionally, the undersigned finds that
Baptist provided record evidence of a legitimate, non-discriminatory reason for terminating the
plaintiff's employment.  Because the plaintiff failed to rebut Baptist's proffered reason with
sufficient record evidence to establish that Baptist's reason was pretextual for discrimination,
there is no genuine issue of fact for a factfinder to find in the plaintiff's favor on her claims.
Accordingly, the Defendant's Motion for Summary Judgment with Supporting Memorandum of
Law (DE# 53, 11/13/20) is GRANTED.

DONE AND ORDERED at Miami, Florida this <u>1st</u> day of March, 2021.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE